**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EDWARD DEWAYNE MCMULLIN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| EVANGELICAL SERVICES FOR | : | |
| THE AGING, T/D/B/A WESLEY | : | |
| ENHANCED LIVING | : | NO. 16-6660 |

**MEMORANDUM OPINION**

Savage, J. August 2, 2017

In this employment discrimination action, plaintiff DeWayne McMullin claims that Wesley Enhanced Living[1] terminated him as the Chief Financial Officer on the basis of his age in violation of the Age Discrimination in Employment Act and on the basis of a disability in violation of the Americans with Disabilities Act. He also makes a claim under the Pennsylvania Wage Payment and Collection Law for repayment of travel costs incurred during his employment.

Moving for summary judgment, Wesley argues that McMullin's age and disability claims are baseless. The undisputed facts, it contends, demonstrate that McMullin was hired at age sixty-three and fired at age sixty-four for poor performance, and the decisionmaker who fired him did not know that he had a heart condition. In response, McMullin pointed to evidence casting doubt on the decisionmaker's credibility. He contends that inconsistencies in the decisionmaker's testimony and among other employees show that the stated reason for the termination was pretext and conjured after litigation began.

---
[1] The defendant, Evangelical Services for the Aging, operates continuing care retirement communities as Wesley Enhanced Living.

Because a jury could infer that McMullin was not fired for performance issues but for discriminatory reasons, we shall deny Wesley's motion for summary judgment on McMullin's discrimination claims. However, we shall grant summary judgment on the WPCL claim.

**Background**

In November 2013, McMullin applied for the position of Chief Financial Officer of Wesley.[2] Following an interview with Wesley CEO Jeff Petty and Vice President of Human Potential Pat Lamoreaux, Wesley offered McMullin the job.[3] He accepted the offer.[4] He began working as Wesley CFO on March 3, 2014.[5] At the time, he was sixty-three years old.[6]

During his time as CFO, McMullin requested time off for routine doctor appointments on five occasions.[7] He did not inform Petty that he suffered from a heart condition, neurocardiogenic syncope syndrome, which caused his "pulse to go down in times of stress," nor did he request any accommodations.[8] Petty denies knowing that McMullin had a heart condition.[9] However, McMullin referenced a cardiologist visit in one email. He did so to excuse his leaving a budget review early to catch a flight, explaining, "My cardio doctor is retiring and tomorrow morning is the only time he could

---

[2] Mot. for Summ. J. Ex. A (Doc. No. 26-3) (application).

[3] *Id.* Ex. D (Doc. No. 26-6) (offer letter).

[4] *Id.*

[5] *Id.*

[6] Resp. Ex. 3 (Doc. No. 29-6) ("McMullin Dep.") at 127:11.

[7] Pl.'s Supp. Br. in Resp. to the Additional Documents Disclosed by Def. Ex. 10 (Doc. No. 36-1).

[8] Compl. ¶ 20; McMullin Dep. at 72:18–73:2, 78:10–18.

[9] Resp. Ex. 6 (Doc. No. 29-10) ("Petty Dep.") at 79:2–8.

see me to pass to another doctor. My pace maker [sic] battery is due to be changed so I could not miss the plane and then my appt [sic]."[10] He does not contend that he had any cardiac or cardiac-related episode during his employment with Wesley.[11]

McMullin contends that Wesley expressed hostility toward healthcare costs because it had a self-insured health insurance program.[12] In his deposition, McMullin testified that Petty once said Wesley limited costs by

> making employees feel unwelcome so that they were encouraged to leave rather than stay around for a long workers' comp claim. He had made similar comments dealing with health insurance claims, which led me to . . . form the opinion that . . . when I did relocate and did come onto the plan that he would have some concerns about my prior health condition and its potential cost to the plan.[13]

While CFO, McMullin remained on his wife's insurance.[14] He was never insured through Wesley.[15]

On May 15, 2015, just over fourteen months after he started as CFO, McMullin was terminated. Wesley claims that McMullin was fired because he continually made errors in financial reports, financial models, and cash sheets.[16] Petty informed McMullin that he was being terminated because it was "not working out."[17] The same day, Petty sent an email to Wesley employees informing them that McMullin "has decided to leave

---

[10] Pl.'s Supp. Br. in Resp. to the Additional Documents Disclosed by Def. Ex. 10 at ECF 6.

[11] McMullin Dep. at 74:5–9.

[12] Compl. (Doc. No. 1) ¶ 23; Answer (Doc. No. 9) ¶ 23.

[13] McMullin Dep. at 82:18–83:8.

[14] *Id.* at 68:23–69:12.

[15] *Id.*

[16] *See* Stmt. of Undisputed Material Facts (Doc. No. 26-2) ("SUMF") ¶¶ 7–16.

[17] Compl. ¶ 28; Answer ¶ 28.

WEL effectively [sic] immediately."[18]

On May 19, 2015, Wesley offered McMullin a severance package.[19] On June 3, 2015, it rescinded the offer[20] after discovering that McMullin had shared confidential information with another company to develop a financial model for him.[21] McMullin contends that Petty knew he used the other company's model to develop financial projections for Wesley.[22]

Wesley did not immediately fill the CFO job. Instead, the CFO duties were initially shared between Petty and Ken Franiak, Wesley's Chief Operating Officer. Franiak had previously been CFO from April 2005 to September 2010. Franiak assumed all of the CFO's responsibilities by February 2016.[23]

Though he maintains that relocation was not a job requirement, McMullin concedes that Wesley expected that he would relocate from California to Pennsylvania.[24] Wesley agreed to provide "reimbursement of reasonable relocation expenses," which included $20,000 "directly related to travel costs for you and your family, shipping and storage of household items, lodging, meals" and $5,000 "for temporary housing."[25] In the event he voluntarily left the job within a year, McMullin had

---

[18] Pl.'s Supp. Br. in Resp. to the Additional Documents Disclosed by Def. Ex. 11 (Doc. No. 36-2).

[19] Mot. for Summ. J. Ex. R (Doc. No. 26-20).

[20] *Id.* Ex. S (Doc. No. 26-21).

[21] *See id.* Ex. T (Doc. No. 27-22).

[22] McMullin Dep. at 31:3–21, 106:18–107:9.

[23] Mot. for Summ. J. Ex. V (Doc. No. 26-24) (responses to interrogatories) at ECF 6.

[24] McMullin Dep. at 44:19, 45:12–46:5, 50:22–51:2, 53:7–8.

[25] Mot. for Summ. J. Ex. D.

to reimburse Wesley for relocation expenses paid.[26]  During his tenure, McMullin rented a one-bedroom apartment two blocks from Wesley's office.[27]  However, he never relocated his family to Pennsylvania and traveled back and forth to California.

On December 28, 2016, McMullin filed this action claiming that Wesley terminated him on the basis of his age in violation of the Age Discrimination in Employment Act and on the basis of his disability in violation of the Americans with Disabilities Act.  He also makes a claim under the Pennsylvania Wage Payment and Collection Law, seeking relocation expenses for travel costs between California and Pennsylvania.  Wesley has moved for summary judgment.

**Standard of Review**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In examining the motion, we must draw all reasonable inferences in the nonmovant's favor.  *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159–60 (3d Cir. 2003).

The initial burden of demonstrating there are no genuine issues of material fact falls on the moving party.  Fed. R. Civ. P. 56(a).  Once the moving party has met its burden, the nonmoving party must counter with "'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

---

[26] *Id.*

[27] McMullin Dep. at 46:8–47:11.

5

574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which it bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

### Discrimination Claims

Where, as here, a plaintiff has adduced no direct evidence of discrimination based on his age or disability, the *McDonnell Douglas* burden-shifting analysis is used to evaluate the claims. First, the plaintiff must present enough evidence to make out a *prima facie* case. If he does, at the second step, the defendant must produce evidence of a legitimate non-discriminatory reason for the adverse employment action. At the third step, the plaintiff must produce evidence that the defendant's proffered reason for taking the adverse action was merely a pretext for the real discriminatory reason behind the adverse action. *Cf. Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 432–33 (3d Cir. 1997) (Title VII race discrimination).

If the plaintiff fails to establish a *prima facie* case, the defendant is entitled to judgment as a matter of law. The determination of whether a *prima facie* case has been established is, under most circumstances, a question of law for the court. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 347 n.1 (3d Cir. 1999).

*Age Discrimination*

To make out a *prima facie* case of age discrimination, McMullin must show that: (1) he is forty years of age or older; (2) Wesley took an adverse employment action against him; (3) he was qualified for the position from which he was removed; and (4)

6

the circumstances surrounding his termination give rise to an inference of discrimination, such as being replaced by someone sufficiently younger. *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009).

Wesley does not challenge the first three elements of the *prima facie* case. McMullin was sixty-four years old. He was fired. Noting that McMullin represented that he had over twenty years of experience as executive vice president or CFO of four companies,[28] Wesley does not challenge that McMullin was qualified for the CFO position when he applied. The disagreement is whether the circumstances surrounding McMullin's termination give rise to an inference of discrimination.

Wesley contends that it could not have discriminated against McMullin because it hired him at age sixty-three and fired him at sixty-four. It also notes that Petty, the same person who hired and fired McMullin, was fifty-seven years old at the time he hired him. It further notes that Franiak, the Wesley employee who assumed the CFO position's duties after McMullin's termination, was fifty-two years old at the time, and, like Petty, a member of the same protected class.

McMullin relies on contradictions in Petty's testimony to support an inference of discrimination. In his deposition, Petty testified that accountant Patrick Young and controller Suzanne Matthews expressed frustration about McMullin's performance to him.[29] When they testified, they contradicted Petty. Young testified that he did not "recall making any direct complaints"[30] or "officially complaining about" McMullin[31] while

---

[28] Mot. for Summ. J. Ex. C (Doc. No. 26-5) (McMullin resume).

[29] Petty Dep. at 38:9–39:10.

[30] Resp. Ex. 8 (Doc. No. 29-12) ("Young Dep.") at 8:15.

[31] *Id.* at 8:22.

7

McMullin was still employed at Wesley. He complained about McMullin "more, I think, after the fact."[32] At the same time, Young "expressed frustration" to Petty that Wesley was unable to pay vendors timely "because the cash sheet wasn't updated properly," a task left to McMullin.[33] Matthews testified that she did not complain or express any frustration "to Jeff Petty directly."[34] She did complain and express her frustration to Franiak and Lamoreaux.[35] The record does not disclose that they relayed the complaints to Petty.

Petty's public explanation at the time of McMullin's departure did not square with the reason he gave in this litigation for McMullin's leaving. McMullin claims that Petty misrepresented his termination to Wesley employees to conceal that he was fired for a discriminatory reason. He points to the email sent by Petty after his termination announcing that McMullin "has decided to leave WEL effectively [sic] immediately,"[36] not that he was terminated.

Franiak was twelve years younger than McMullin at the time he took over the CFO responsibilities in 2015. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) (holding that the plaintiff need not show any specific age difference to satisfy the fourth element of the *prima facie* case, and that even a five-year difference can be sufficient) (citations omitted). One could infer that Wesley had tried working with an older man, but later decided to go with a younger one because it was "not working

---

[32] *Id.* at 9:2–3, 13.

[33] *Id.* at 8:18–21.

[34] Resp. Ex. 9 (Doc. No. 29-13) ("Matthews Dep.") at 12:8.

[35] *Id.* at 12:12.

[36] Pl.'s Supp. Br. in Resp. to the Additional Documents Disclosed by Def. Ex. 11.

8

out."[37]

As is the case here, "the *prima facie* case and the pretext inquiries often overlap." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008). Based on the record as it is now, a jury could find Wesley's explanation for terminating McMullin incredible. Such a finding may give rise to an inference of discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."). Credibility determinations, the drawing of legitimate inferences from facts, and the weighing of evidence are matters left for the jury. *Anderson*, 477 U.S. at 255.

McMullin has made out a *prima facie* case of age discrimination. There is evidence, if believed, that he was fired on the basis of his age. A jury could infer discrimination if it concludes that Wesley's explanation for terminating McMullin is not credible.

*Disability Discrimination*

To make out a *prima facie* case of disability discrimination, McMullin must show that he: (1) is "disabled" within the meaning of the ADA; (2) is otherwise qualified to perform the essential functions of the job; and (3) suffered an adverse employment decision because of discrimination. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010).

In a footnote, Wesley contends that McMullin is not disabled within the meaning of the ADA. Under the ADA, a person is disabled if he: (1) has a physical or mental

---

[37] Compl. ¶ 28; Answer ¶ 28.

impairment that substantially limits one or more major life activities; (2) has a record of the impairment; or, (3) is regarded as having such an impairment. *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 762 (3d Cir. 2004) (citing 42 U.S.C. § 12102(1)). When Congress passed the ADA Amendments Act of 2008 (ADAAA), it clarified that the phrase "substantially limits" is not intended "to be a demanding standard." 154 Cong. Rec. S8840–01 (2008), 2008 WL 4223414.

Contrary to his contention, McMullin does not have an actual disability within the meaning of the ADA. He asserts that he suffers from a heart condition, neurocardiogenic syncope syndrome, which causes his "pulse to go down in times of stress."[38] He asserts that, on two occasions, the condition caused his heart to stop completely.[39] He sees his cardiologist every other month.[40] He does not contend that, during his employment with Wesley, his condition manifested in a way other than regular doctor appointments.[41] As Wesley claims, McMullin is not disabled within the meaning of the ADA because his heart condition did not substantially limit one or more major life activities during his employment with Wesley.

McMullin has barely presented a *prima facie* case of "regarded as" disability. Under the ADA, a person is "regarded as" disabled if he: (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by his employer as having such limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward

---

[38] Compl. ¶ 20; McMullin Dep. at 72:18–73:2.

[39] McMullin Dep. at 73:3–8.

[40] *Id.* at 74:10–15.

[41] *See id.* at 74:5–9.

10

the impairment; or (3) has no such impairment but is treated by his employer as having a substantially limiting impairment. *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 187 (3d Cir. 1999) (citing 29 C.F.R. § 1630.2); *Warshaw v. Concentra Health Servs.,* 719 F. Supp. 2d 484, 495 (E.D. Pa. 2010).

Wesley argues that Petty did not know that McMullin had a heart condition. To establish disability discrimination, "an employer must know of the disability." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002).

The parties agree that McMullin did not inform Petty that he had a disability. However, Petty had information from which he could have believed he did. To show Petty knew of McMullin's condition, McMullin points to five emails to Petty requesting time off for doctor appointments.[42] He referenced needing to see a cardiologist in an email apologizing for leaving a budget review early to catch a flight, and explained, "My cardio doctor is retiring and tomorrow morning is the only time he could see me to pass to another doctor. My pace maker battery is due to be changed so I could not miss the plane and then my appt."[43] In his deposition, Petty testified that he "did not interpret that he had a heart problem."[44] A jury could infer that Petty regarded him as disabled from his having been advised that he was regularly seeing a cardiologist and had a pacemaker.

To make a *prima facie* case of disability discrimination, McMullin must also show he was terminated for discriminatory reasons. Wesley argues that the circumstances surrounding McMullin's termination do not give rise to an inference of discrimination on

---

[42] Pl.'s Supp. Br. in Resp. to the Additional Documents Disclosed by Def. Ex. 10 (Doc. No. 36-1).

[43] *Id.* at ECF 6.

[44] Petty Dep. at 79:2–8.

the basis of disability. As we have discussed, Petty's reason for firing McMullin is contradicted by the reason given to the staff.

*Pretext*

A defendant can satisfy its "relatively light" burden of showing a non-discriminatory reason for its action, *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013), by "introducing evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision," *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Wesley's burden is one of "production, . . . not of persuasion." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123–24 (9th Cir. 2000). It "need not prove that the tendered reason *actually* motivated" its decision. *Fuentes*, 32 F.3d at 763. It need only show that its decision could have been motivated by the proffered legitimate, non-discriminatory reason. *Id.*; *Iadimarco v. Runyon*, 190 F.3d 151, 157 (3d Cir. 1999).

Wesley contends that it fired McMullin due to performance issues. It claims that McMullin regularly made errors in financial reports, financial models, and cash sheets.[45] It asserts that, based on these performance issues, Petty decided to terminate McMullin.[46]

Because Wesley has articulated a non-discriminatory reason, the burden shifts back to McMullin either to discredit Wesley's proffered justification or present evidence that he was fired because of a discriminatory reason. *Fuentes*, 32 F.3d at 764. A plaintiff may discredit the proffered reason by demonstrating "such weaknesses,

---

[45] SUMF ¶¶ 7–16.

[46] *Id.* ¶ 17.

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* at 765 (emphasis removed) (citations and internal quotation marks omitted); *see also DeAngelo v. DentalEZ, Inc.*, 738 F. Supp. 2d 572, 580 (E.D. Pa. 2010). A plaintiff can meet his burden by "point[ing] to evidence with sufficient probative force" from which a fact finder could conclude that the adverse employment action was more likely than not the result of discrimination. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644–45 (3d Cir. 1998); *Fuentes*, 32 F.3d at 764.

In other words, McMullin must proffer evidence which: "1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 762.

McMullin has offered evidence supporting an inference of discrimination and showing that Wesley's reasons for firing him are pretext. McMullin pointed to contradictions of Petty's testimony. In addition, the last email provided by Wesley showing McMullin's performance issues was dated February 18, 2015,[47] almost three months before McMullin's May 15, 2015 termination. McMullin argues that this three-

---

[47] *See* Mot. for Summ. J. Ex. E (Doc. No. 26-7) (dated July 23, 2014); *id.* Ex. F (Doc. No. 26-8) (dated November 25, 2014); *id.* Ex. G (Doc. No. 26-9) (dated December 12, 2014); *id.* Ex. H (Doc. No. 26-10) (dated December 17, 2014); *id.* Ex. I (Doc. No. 26-11) (dated December 19, 2014); *id.* Ex. J (Doc. No. 26-12) (dated December 30, 2014); *id.* Ex. M (Doc. No. 26-15) (dated February 13, 2015); *id.* Ex. N (Doc. No. 26-16) (dated February 16, 2015); *id.* Ex. O (Doc. No. 26-17) (dated February 17, 2015); *id.* Ex. P (Doc. No. 26-18) (dated February 17, 2015); *id.* Ex. Q (Doc. No. 26-19) (dated February 18, 2015).

month period shows that he would have been fired for performance issues sooner if that was the real reason for his termination. Thus, a jury may infer that McMullin's performance issues are pretext and reasonably conclude that Wesley's stated reasons for firing him are fabrications.

**Wage Payment and Collection Law Claim**

McMullin also seeks $20,000 in unpaid relocation expenses. Wesley contends that McMullin is not entitled to relocation expenses because he never relocated from California to Pennsylvania.

The WPCL "provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 953 (Pa. Super. 2011) (quoting *Oberneder v. Link Comput. Corp.*, 696 A.2d 148, 150 (Pa. 1997)), *aff'd*, 106 A.3d 656 (Pa. 2014). It does not create a right to compensation. The contract between the parties, not the WPCL, governs whether specific compensation is earned. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003) (quoting *Antol v. Esposto*, 100 F.3d 1111, 1117 (3d Cir. 1996)); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

The parties do not dispute that relocation expenses fall within the scope of the WPCL. Under the WCPL, an employer who "agrees to pay or provide fringe benefits or wage supplements" must pay or provide them "as required[] . . . within 60 days of the date when proper claim was filed by the employe in situations where no required time for payment is specified." 43 Pa. Cons. Stat. § 260.3. Fringe benefits or wage supplements include "reimbursement for expenses" and "any other amount to be paid pursuant to an agreement to the employe." *Id.* § 260.2a.

Whether McMullin's travel costs are reimbursable as relocation expenses turns on an interpretation of the offer letter. The offer letter provides for "reimbursement of reasonable relocation expenses for your move from La Canada, CA."[48] Relocation expenses include $20,000 "directly related to travel costs for you and your family, shipping and storage of household items, lodging, meals."[49]

The Court's primary task in contract interpretation is determining the intent of the parties. *401 4th St., Inc. v. Investors Ins. Group*, 879 A.2d 166, 171 (Pa. 2005) ("The purpose of [interpreting a contract] is to ascertain the intent of the parties as manifested by the terms."). In doing so, effect must be given to all the provisions in the contract. *Murphy v. Duquesne Univ. Of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) ("The whole instrument must be taken together in arriving at contractual intent.").

When the contract language is clear and unambiguous, the court construes the contract as a matter of law. *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009). On the other hand, where the contract is ambiguous, it is for the factfinder to ascertain the parties' intent. *Id.* Merely because the parties interpret the contract differently does not mean it is ambiguous. *Espenshade v. Espenshade*, 729 A.2d 1239, 1242 (Pa. Super. 1999). Only where a contract is reasonably capable of different constructions and understood in more than one sense is it ambiguous. *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468–69 (Pa. 2006). Where the alternative meaning is unreasonable, there is no ambiguity. *Murphy*, 777 A. 2d at 430.

Applying these principles, we find that the offer letter is clear. The letter referred

---

[48] Mot. for Summ. J. Ex. D (Doc. No. 26-6) at 1.

[49] *Id.* at 2.

to travel for relocation, not for shuttling back-and-forth during the term of employment. It included "travel costs" as part of relocation expenses, listing costs "directly related" to relocation: "travel costs for you and your family, shipping and storage of household items, lodging, meals." Travel costs are enumerated as part of a series of items related to relocation. *See Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 520 (3d Cir. 2012) (quoting *Northway Vill. No. 3, Inc. v. Northway Props., Inc.*, 244 A.2d 47, 50 (Pa. 1968) ("Similarly, '[t]he ancient maxim "noscitur a sociis" summarizes the rule that the meaning of words may be indicated or controlled by those words with which they are associated. Words are known by the company they keep.'").

Because the offer letter is clear, we construe it as a matter of law. Travel costs back-and-forth from Pennsylvania to California for family visits are not relocation expenses. Therefore, we shall grant Wesley's motion for summary judgment on McMullin's WPCL claim.

**Conclusion**

We shall grant Wesley's motion for summary judgment in part and deny it in part. There are a number of disputed material facts surrounding McMullin's discrimination claims, precluding summary judgment on those claims. There are no disputed material facts regarding the relocation expenses. Wesley is entitled to judgment as a matter of law on the WPCL claim.